Case No. 15-5572, Violet Hogan v. Jo Ellen Jacobson, et al. Oral argument not to exceed 15 minutes per side. Mr. Michael Grabhorn for the appellant. May it please the court, my name is Michael Grabhorn, I'm appearing here on behalf of Violet Hogan, the appellant in this matter. With the court's permission, I'd like to reserve three minutes, if that would be sufficient. Where to begin? This right now issue before the court, from Ms. Hogan's standpoint, is largely procedural in nature. We've never reached the merits of an actual claim or not at this point in time. And what we have is what's becoming a fairly routine issue, is a tension between federal law and state law. And in this case involving ERISA and whether or not its preemption reaches a state law claim that has been asserted against a non-ERISA party. Obviously, it's Ms. Hogan's position that her state law claim should have stayed in state court. She was removed to federal court solely on a federal question, solely on the basis of ERISA preemption. And I think therein is where the problem comes about to a large degree. Because when we look through the case law over the years, there is a convolution of two concepts. The first is ERISA express preemption, which is contained at 29 U.S.C. 1144, which is what I will call the relates to clause that goes back to the Supreme Court's decision in Travelers, as far as everything relates to everything. So we have to have some in somewhere in sight, but essentially relates to. And relates to is an affirmative defense. But this was not express preemption, correct? No, this is not express preemption. Again, we were removed to federal court because express preemption is essentially an affirmative defense. 1144 cannot stand as a basis for removal. Just as if we were in state court and they want to raise it there, they're fully welcome to do so, fully empowered to do so. They can argue to a state court judge who's just as empowered to make a decision as a federal judge in these matters, right? But that's not what we're here on. The only way we can be in federal court is if there was complete preemption, that overwhelming we read the complaint to say something else. And in this instance, how do we get there and how do we do the analysis? And the Supreme Court has put forth a very straightforward test in the D'Aviglia decision, which is a two-part test, and it's conjunctive. You have to meet both parts. And so the removing party, in this case the appellees, Jacobson and Lockhart, were required to demonstrate that Ms. Hogan's state law claim, her negligence per se claim for violation of a state statute, a medical licensing statute, that notably has been on the books since 1954, well over 20 years in advance of ERISA, that they bear the burden of proof at demonstrating two things. One, that she could have asserted her state law claim against them under 29 U.S.C. 31A1B, or call it the benefit claim, that she could have asserted a benefit claim against them. And in this instance, unfortunately, I think what happened is that the district judge convoluted the expressed preemption analysis with the complete preemption analysis. And when we look at the removal papers and we look at the response brief filed to the initial motion or remand, I think that the defendants or the appellees necessarily kind of fueled that. And here's what happens is they've conceded. They have conceded that neither Jacobson nor Lockhart, both of the defendant appellees, are proper ERISA defendants. They're not a fiduciary. They're not a claim fiduciary. They weren't making a claim decision. And more importantly, under... They were acting in the process of deciding whether or not your client would be entitled to ERISA benefits, right? They were employed by an insurance company, whether it was Life Insurance Company of North America, Lina, who the original claim was against, whether it was another subsidiary of Cigna. But in answer to your question, Judge Moore, yes, they were tapped by the plan, so to speak, to review medical records and provide a medical opinion. And just because... And what we're getting into there, though, is the minute we start into that analysis, that's a relates-to analysis. That's an affirmative defense. It's not whether or not she could have brought a benefit claim against Jacobson and Hogan. Jacobson and Hogan. Jacobson and Lockhart. She couldn't. They've admitted that. And then the second part of the test, the D'Aviglia test, the other conjunctive issue in it, and this is where the court also, the district court, unfortunately, still relied on a relates-to analysis. And the second part of the D'Aviglia test simply says that there is an independent legal duty. And from a medical licensing standpoint, most states, if not the majority of them, I can't say the majority because we haven't completed all the research yet, but every state we've looked to so far has a public policy whereby anyone who is providing medical opinions on a resident of that state is required to be licensed. They need to be vetted before we release them on the public sort of thing. And this has been extended. Has that been applied by any court to reviewers who are reviewing pursuant to ERISA plans? I'm going to try to break your question into parts. I'm sorry? Are you really the first lawyer or client to be advocating for this? I don't know if I'm the first lawyer. I know I'm one of the most active ones advocating for it in the Sixth Circuit currently. But you don't have any cases that support your proposal, do you? My proposal to what? To allow this claim to go forward as a state law claim notwithstanding ERISA complete preemption. Setting aside ERISA preemption, we're currently in litigation on those. Do we have an actual court decision? No. Do we have board decisions who are entitled to deferential review and application? Absolutely. Meaning the board's decision? The Kentucky Board of Medical Licensing. The state board decision? Yes, Judge Moore. Yes. So the harm that is sought here is the benefits, right? That wasn't plugged that way, no, Your Honor. Well, what are you seeking? I'm seeking all available relief, whether it's compensatory or not, and they're available under state law. But even if we were to set... Well, wouldn't the benefits be a component of that? They possibly could be. But here's the thing. The Sixth Circuit's already held a new court and at least two other cases, Thurman being one of them, that just because we reference that plan over there, we look at it for, okay, what was the value of that that was lost? That does not translate to complete preemption. In order to be completely preempted, and it's conjunctive, they have to... What kind of relief do you think you might get? Well, under Kentucky law, she's entitled to seek all compensatory relief. What would the elements of that be? The elements of the claim, that's interesting because we haven't briefed that or addressed it on the merits. But given that, if you're asking me to poke off the cuff, Judge Gibbons, is this. A large part of her condition was mental and nervous, severe anxiety. And so anyone who's ever dealt with severe anxiety and that sort of thing... Would she be able to recover damages for emotional distress? Under Kentucky law, absolutely. Would it be the emotional distress caused by the Jacobson and Lockhart setting themselves out as qualified under Kentucky law when they weren't? Yes, Judge. In Kentucky, we have a negligence per se general rule. And actually, we have a statute, 446.07 OFKRS, that allows for an individual cause of action for a violation of a state statute that does not in and of itself provide for individual relief. It's our negligence per se that has been put in the form of a statute. Just theoretical, if she was not wrongfully denied benefits, then how would you causally trace her injuries to the individuals you sue? Ultimately, it doesn't matter what happened with what Lina did ultimately on its claims decision and the claims fiduciary. I could care less about that. The damage here and the harm here, the elements are, one, did they render a medical opinion, fact issue? Two, is it a violation of state statute, negligence per se? Has it there? Any damages that she can know that naturally flows from that? I'm just hard-pressed to see how their not being licensed would cause her damages if it's already been determined that, you know. The only thing that was determined, and again, this is what we're talking about here, by the way, is all about relates to. When you bring up the prior case, that's a collateral estoppel kind of argument, a res judicata, and again, that's an affirmative defense. The point here that we have on appeal is whether or not, frankly, we're in the right forum. In order to be in federal court, federal question, limited jurisdiction, they have to demonstrate complete preemption, express preemption in what may or may not happen at the state court level, whether or not, as Judge Gibbons said. It seems that there is an argument for complete preemption here, which is that the essence of the determination is whether or not your client was entitled to ERISA benefits. And the ERISA plan has these nurses or psychologists deciding on a review basis is there enough shown to allow the client to go forward. And the nurse psychologist people say no, and then it goes through the rest of the ERISA plan. And so anything that has to do with the area of the ERISA plan is completely preempted under the complete preemption doctrine. You're saying no, that what I've described as it relates to the situation. Yeah, we're clouding that water again. And by the way, I will point out I have a typo in my brief. I referred to an opinion as a dissent when it was a concurrence in Lofredo. And when I saw the panel, I needed to make sure I addressed that. But thank you. Yeah, I think we are. Because ultimately when we look at the cases that have been developing, and the court will see in the record, I've continued to give additional cases that are coming in across the country where courts are saying, hold on now. You don't have a get-out-of-jail-free card just because you're in an ERISA plan. If you misrepresent, if you interfere with a tortious interference with contract, the Hartland case out of the Sixth Circuit, if you peep in somebody's window while doing surveillance in the processing of the claim, which is the Dishman case out of the Ninth Circuit, and I can go on with the other cases out of the Second, out of the Fifth, out of the Seventh, where the courts are saying, beyond me, there's a fraud case, all of it related to, all of it related to. This is in the core of the adjudication, review, examination, application, implementation of the ERISA plan. None of those cases, it seems to me, really arise as this one does. I'm going to run around 10 seconds. I'll run over on my answer. Please respond to his question. Okay. And I respectfully disagree, Judge. Dishman, by way of example, was doing an administration of a UNAM policy. They hired surveillance. What did the surveillance people do who were helping them make a decision on the claim? They went and they surveilled somebody, but they violated their privacy rights when doing that. And so we can't, there has to be a line somewhere that an ERISA plan, if it goes out and hires a third party, if it hires an individual internally, however they get it, however they go about their process, they cannot violate court law, state law, or otherwise. So to be extreme, they can't go out and murder somebody. That would be a state criminal violation that could be processed under state criminal law as opposed to being completely preempted under ERISA. Yes, Judge Moore. I think what that is would be the extreme over here, and then what's the extreme over here, and where do we draw the line where a complete preemption, and I would suggest it's much further to the left, because of listening to the last argument about the supremacy clause came up. The red light has been on, so if you want to save your time for rebuttal. I'll do that on rebuttal. Thank you, Judge. Thank you. Judge Moore, Judge Givens, Judge Davis, counsel, good morning. Cameron Hill from Chattanooga, Tennessee. I'm reminded, and I will probably get it wrong, but I'm reminded of the saying about the duck. If it walks, quacks, looks, talks, it's a duck. This is a duck. This is complete preemption. There is no other way to look at the matter. The facts are abundantly clear, and it's very simple and straightforward to see those facts when understanding the full breadth of the history of this matter and how we got to this point today, how we are again today before the Sixth Circuit. So the essence of your opponent's argument seems to be that this is a relates-to case as opposed to a complete preemption case. So if you could address that, that would be helpful. Your Honor, this is a ERISA complete preemption case, and it's not a relates-to case because if you look at Hogan 1, the history of Hogan 1, Hogan 1 was brought as an STD-LTD claim. Both claims were brought. During the course of that underlying matter in Hogan 1, Hogan sought discovery about the full and fair review process. That's what makes this a complete preemption case. Every place you look in this case, every time you turn your head, open a new door, go around a corner, you're faced with the facts of complete preemption, the facts of whether Ms. Hogan got a full and fair review of her ERISA claim. She brought an STD claim. She brought an LTD claim in Hogan 1. The district court below in Hogan 1 denied her STD claim. It went up on appeal. The Sixth Circuit affirmed the district court's decision and found specifically that Ms. Hogan did not bring an LTD claim. Found that she had failed to exhaust her administrative remedies below in Hogan 1. Significantly in Hogan 1, and this is a very important aspect. It's one of the reasons why our client has repeatedly argued that collateral estoppel or res judicata or waiver or some concept like that applies. The discovery Ms. Hogan conducted below went to the facts that she's now alleging. She knew because she asked during discovery below whether Jacobson and Lockhart were licensed under Kentucky law. She knew those facts. She got them during Hogan 1, you're saying? Yes, Your Honor, during Hogan 1. And she argued in her brief both before the district court and before the Court of Appeals that their licensure, their licensure, and otherwise their qualifications were facts relevant to the court's analysis regarding whether she had received a full and fair review. She argued below in Hogan 1, both at the district court and before this court, that their licensure or lack of licensure constituted a fact the court should consider regarding whether she should be provided ERISA benefits. She knew all of that. She had all of that information before. The only difference, and she sued only the insurance company in Hogan 1. She did not sue the nurse case managers. Could she sue the nurse case manager under ERISA? She may not. They are not fiduciaries. And as a fact, they did not make the decision to deny her the benefits. That's in the record as well. The company, the insurance company, is the company that makes the decision. It takes the information provided by the reviewers and considers it and makes a decision about what to do, and the company denied benefits. But no, Your Honor, they cannot be sued under ERISA. And that's… So you're saying that ERISA completely bars any state law claim that she might otherwise have? Well, in this particular… Failure to get licensed and yet doing work in Kentucky? On the facts of this case, she may not bring the claim she has brought now, but based on the history of Hogan 1. And multiple district courts in Kentucky have ruled, have determined, that the licensure statutes under which she's brought this claim do not apply to. And Mr. Grabhorn has been involved in all of those cases. The district courts below have all said, these statutes don't apply to people in the nurse case manager's position, like Apolise here, when they are involved in the claims review process. Do you need to tie it to Hogan 1, or is that just icing on the cake for your position? In other words, suppose she didn't know those facts during Hogan 1, wouldn't you be able to argue that the claim was completely preempted anyway? Absolutely. Absolutely would. And that… I've often thought when… These things can be kind of fun to explore intellectually what's going on. There is a better way to do this. It still would have resulted in preemption, but it could have been a straightforward, hey, look, I've got an opinion. I know all this stuff happened below, the icing. I know the icing occurred below. That doesn't matter. What matters is… But it is icing. What matters is what? Why don't you say what your legal principle would be if we didn't have the icing on the cake? It's completely preempted because, without question, the core, to borrow Judge Davis' term, the core, the gravamen of the analysis is what happened during the claims review process. It is the only nexus here. Arguably, you could… Could you assert the lack of licensure of the reviewers as kind of a subset of the claim that the administrative decision was arbitrary and capricious? Your Honor, I don't think arguably is the right question. I think did is the right statement. Counsel below made the argument that they were not licensed, and accordingly, they, the line made an incorrect decision and did not provide a full and fair review. That is a fact in the record below. It's a fact noted by the district court below and noted by reference by the Sixth Circuit because the Sixth Circuit found she had been, Ms. Hogan, had been given a full and fair review, and the Sixth Circuit noted in Hogan 1 the fact that Jacobson and Lockhart were not licensed. It's kind of like the plaintiff says, my experts are board certified, and the reviewers, though licensed, hired by the insurance company, none of them are board certified in whatever specialty, and therefore, the argument is kind of like, it's not full and fair review process because you hired these hack doctors who can't even gain board certification. I mean, we see these arguments in ERISA cases, right? Absolutely. We see arguments about doctors who are sort of on the payroll, effectively on the payroll of the insurers. You saw those arguments below here, Your Honor. Yeah. In Hogan 1, again, it is icing, Judge Moore, but it's very, very strong, sweet icing that we all are looking at here because it is the elephant in the room. One cannot get to Hogan 2 but through Hogan 1. It's a fact. It has existed. In the court below, counsel made repeated arguments of the nature that the court is asking right now. They weren't as specific, but the court alleged these people are not qualified. They're not licensed. They're not qualified. They are their own internal people. It's replete. The fact citations below arguing that these nurse case managers, by name, contributed to the failure for her to receive a full and fair review is on the face of multiple pages below. It's very clear. When you're saying below, are you referring to the previous Sixth Circuit case? Is that... Yes, Your Honor. Normally, we think of below being the district court below. Below and to the side. The one that made the decision in this case. We argued those same facts repeatedly in this case below, immediately below. We argued those same facts pointing out, and we did this through the context of the res judicata collateral estoppel because, to me, Hogan 1 has a significant effect on where we are today because when we get to the nuts and bolts of Hogan 2, it's the findings of Hogan 1 that control. The court in Hogan 1, the Court of Appeals in Hogan 1, determined that Ms. Hogan did not bring an LTD claim. She failed to exhaust her administrative remedies. So, it really begs the question now, what claim has she brought? She can't bring an LTD claim. She has tried to capture... Every way you look at this, this is an ERISA case. Davila, the actual quote from Davila is important. Davila talks about any law that supplements or supplants ERISA is preempted, and Davila does not require a specific corollary claim in state court that can survive. It doesn't require that. It doesn't also require that the exact claim be brought against the exact defendants. It doesn't say them, as counsel stated earlier. It says if an individual, at some point in time, could have brought his claim under ERISA, 502A1B. Here, Hogan brought her claim under 502A1B. Not against these parties, not against the appellees, but she brought that claim, seeking that relief. The second phrase is where there is no other independent legal duty implicated by defendant's actions. If neither of those are present, and it is conjunctive, then the individual's cause of action is completely preempted. The second prong. Why is the second prong met here, and why is it completely preempted? Because there is no other legal independent duty. The district courts below, first of all, found that the statute doesn't apply to someone analyzing claims in an ERISA claims process. Factually... So that was a finding, an explicit finding in Hogan 1? Hogan 2. The district court below in Hogan 2. And is it a finding or a legal conclusion? Well, Your Honor, it's a legal conclusion. I think that is a legal conclusion. I think it's married a little bit with facts because some of the facts, the facts in this case, suggest that there was no... that the facts didn't rise to the level to trigger the activity governed by the statute. So that's the second reason. One, it's legal. Two, factual. Three, and we haven't spoken about this yet, but ERISA does speak to licensure. ERISA itself speaks to licensure. ERISA says in 29 CFR 2560.503-1, parent H, parent 3, parent i, that in deciding an appeal of any adverse benefit determination that is based in whole and part on a medical judgment, the appropriate named fiduciary here, Lina, shall consult with a health care professional. Why is that important? Well, it says, I'm sorry, it says, shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. Judge Davis, that touches your point. Your point was if a party wants to dispute the qualifications, the bona fides, the conclusions, my doctor went to Harvard, my doctor went to state college. Do it there. He did it below. He did that below. This CFR section also addresses why there is no other independent legal duty. ERISA speaks to this. All ERISA says is you have to consult with somebody. This CFR anchors it clearly in an ERISA claim enforcement case, an ERISA full and fair review question. The question is did she get a full and fair review? And yet, as I understand it, plaintiff says we've got this negligence per se doctrine under Kentucky law that is sort of like a brooding presence over the medical profession. What's your response to that? Because, I mean, she didn't walk into their office one day off the street, right? The only connection is the ERISA plan, and yet plaintiff seems earnestly to insist that this negligence per se doctrine somehow saves her from having to allege a specific duty or even specific damages. It's just the existence of the Kentucky statute together with this negligence per se doctrine for violation of a statute or certain statutes. I mean, it's a well-constructed kind of concept. Do you like that kind of thing? My time is almost up, but I think that the answer to that is important, and unfortunately it is a lengthy answer. That argument is made in a vacuum. It is made in the vacuum, again, of the absence of Hogan 1. Hogan 1 occurred plain and clear in front of the whole world, and it came up at this court and was affirmed. So that's the most important issue there. Secondly, there is no damage caused by these two individuals, the appellees. They, as the court below noted, didn't even make the decision to deny her benefits. Their licensure is a question that can be analyzed during the course of the full and fair review process. So to answer a question Judge Gibbons had earlier regarding the measure of damages, one cannot look at this case without looking at it through the prism of the ERISA claims review administrative process that occurred. It is the only nexus. It is the only link that Ms. Hogan has to any kind of damages whatsoever. Thank you. Thank you, Your Honor. When I was wrapping up, and I'm sorry I ran over last time in court, I was getting ready to jump to a comment that was made during the first oral argument that I was listening to in passing, and I think Judge Davis, you posed a question, or hopefully it was you, about the supremacy clause and about the tensions, as I indicated when I started my argument today, the tensions between federal and state law. And it has not been supplemented. I'll be happy to do so as well, but I caught this doing some research yesterday. In a recent Supreme Court case, Gobeyell v. Liberty Mutual Insurance Company, Justice Thomas wrote an interesting concurrence about ERISA preemption in general. And pulling the quotes, the supremacy clause gives supreme status only to those federal laws that are made in pursuance of the Constitution. Moving on, I question whether any provision of Article I authorizes Congress to prohibit states from applying a host of generally applicable civil laws to ERISA plans. The Constitution requires a distinction between what is truly national and what is truly local. Was Justice Thomas writing for a majority or just for... It was a concurrence opinion with the majority. I think the vote was 5-2, so there were two concurrent opinions, I believe, but I think... The key is that he... It's not holding. ...was thinking for himself. Right, you're right. It wasn't the necessary vote to make the majority for the ruling. Okay, that's why I said it's interest in passing. And so as we turn back to things, and I want to answer also a question you posed earlier, Judge Moore and Judge Gibbons, I think, to try to give you a better approach to it. Again, we're talking about complete preemption. And when I hear the word nexus, that's just a synonym for relates to. De Villa has a two-part test for complete preemption. One is could the claim... Could this claim... Could this claim have been asserted under ERISA and the defendant has said no? The conjunctive of that, or the also requirement that we've been talking about at length, is independent. And I think that when we do the independent analysis, a lot of times that's where we start getting into does it relates to, is it truly independent. Well, we don't even need to get there. I don't think it is a relates to issue. I think it's that if we have a separate state law, they have to comply with the state laws as well. But we don't necessarily have to get there because they've conceded. There's no dispute that Ms. Hogan could not have sued Jacobson and or Lockhart under ERISA for a violation of the state licensing laws. Now, the defendant points out that... Is it a matter that the issue could have been raised in Hogan 1 and arguably was raised in Hogan 1? No, because a plaintiff is free as the master of their complaint. That's a caterpillar decision. She can sue who she wants, raise the claim she wants, when and if she wants, and defendants and or are ready to raise their affirmative defenses. Everything we hear about Hogan 1, that's an affirmative defense. And the state court judge is just as competent to address that. And my time's up. Well, thank you very much. Thank you both for your argument. The case will be submitted. Thank you, Your Honor. Let the court call the case.